E. I. DU PONT DE NEMOURS & COMPANY, Northrop Brown, William Philip Langsdorf, Jr., and Carl Earle Schweitzer, Plaintiffs,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 881-62.

United States District Court
District of Columbia.

Dec. 3, 1963.

**150**

Frederick Schafer, Washington, D. C., Louis F. Reed, Fish, Richardson & Neave, New York City, Allan R. Plumley, Earl L. Tyner, Jr., Wilmington, Del., for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This action was filed pursuant to Title 35 U.S.C. § 145 seeking judgment authorizing the defendant, Commissioner of Patents, to issue Letters Patent containing claims, 2, 3, 4, 7, 8 and 9 of application Serial No. 682,325, filed September 6, 1957, entitled "Polyoxymethylene Diethers". This application was assigned to the plaintiff, E. I. Du Pont De Nemours & Company, by the inventors Northrop Brown, William Philip Langsdorf, Jr., and Carl Earle Schweitzer.

Claims 2, 3 and 4 define a new composition of matter, namely, polyoxymethylene dialkyl ethers, and claims 7, 8 and 9 define a "shaped article", a "film", and a "filamentary article", respectively, made from the composition defined in claim 2. Process claims 5 and 6 stand allowed.

It was agreed by counsel for the parties that all the claims in suit stand or fall with claim 2 which reads as follows:

"2. A polyoxymethylene dialkyl ether in which the alkyl ether groups have 1–6 carbon atoms, having a number average molecular weight of at least 15,000 and characterized by having reaction rate constant for thermal degradation at 222° C. of less than 1% by weight per minute."

Claims 2 to 4, and 7 to 9 were finally rejected as unpatentable over a publication entitled "Die Hochmolekularen Organischen Verbindungen-Kautschuk Und Cellulose" (translated as "High Molecular Organic Compounds of Rubber and Cellulose"), written by Dr. Hermann Staudinger and published in 1932. In the Examiner's Answer, the rejection was modified, and the claims were rejected as unpatentable over the Staudinger publication "taken together with" the Mac-Donald patent No. 2,768,994, granted to the plaintiff, Du Pont. The Patent Office Board of Appeals affirmed that rejection of the claims, and the sole issue before this Court is whether the conclusion reached by the Board of Appeals was clearly erroneous.

The tribunals of the Patent Office held that since the Staudinger publication discloses the preparation of polyoxymethylene dialkyl ethers of a molecular weight between about 1,500 and 4,500, and the MacDonald patent discloses a high molecular weight polyoxymethylene of excellent thermal stability for use in making molded articles, fibers, films, bristles, and other articles commonly made from synthetic plastics, it would be obvious to an organic chemist of ordinary skill to form a dialkyl ether from the high molecular weight polyoxymethylene of the MacDonald patent.

It is the contention of counsel for plaintiff that the Staudinger publication "teaches away" from the conclusion reached by the Patent Office, and in fact, would lead an organic chemist of ordinary skill to believe that high molecular weight polyoxymethylene dialkyl ethers could not be prepared, and even if preparable, would be chemically unstable.

The reference publication is a report on Dr. Staudinger's studies of the chemical structures of rubber and cellulose. These studies included an investigation of the polymers of polyoxymethylene because of the similarity of the chemical structures of those polymers and cellulose. In that investigation, the end groups of polyoxymethylene were modified to produce polyoxymethylene dimethyl ether having an average molecular weight of about 3,000, and it is of interest to observe that in the publication such products were referred to as "higher molecular weight products", since apparently, by Dr. Staudinger's standards, the production of polyoxymethylene dialkyl ethers of even that low degree of polymerization was an accomplishment.

It is noted by the Court that at no time did Dr. Staudinger purport to have prepared polyoxymethylene dimethyl ethers having an average molecular weight

greater than 4,500. Moreover, throughout the publication, he categorically concluded that polyoxymethylene dimethyl ethers having average molecular weight substantially greater than 4,500 could not be prepared, and in fact, he proposed several scientific explanations justifying that conclusion.

In the publication Dr. Staudinger also described what he considered to be a very high molecular weight polyoxymethylene which he called "eupolyoxmethylene", but he concluded that eupolyoxmethylene dimethyl ethers could not be prepared. This conclusion is interesting because eupolyoxmethylene is comparable with respect to average molecular weight to the polyoxymethylene employed as the starting material in plaintiff's invention, and to the polyoxymethylene disclosed in the MacDonald patent.

From a careful reading of all the pertinent portions of Dr. Staudinger's publication, it is the opinion of the Court that plaintiffs' claimed invention would not have been obvious, in view of this publication, to one skilled in this art, and in fact, the publication would lead persons skilled in the art to believe that the claimed invention could not be prepared.

As stated above, the MacDonald patent discloses a thermally stable, high molecular weight polyoxymethylene. Such a polyoxymethylene, as plaintiffs' application points out, may be employed as a starting material in the production of polyoxymethylene dialkyl ethers of plaintiffs' invention. However, this patent does not disclose or teach anything about "endcapping" polyoxymethylene with alkyl ether groups. Therefore, even combining the teachings of this patent with the teachings of the Staudinger publication, plaintiffs' claimed invention would still be unobvious to one skilled in this art.

■ Moreover, it appears that two years prior to the work of the inventors of the present application, the plaintiff, Du Pont, had five highly skilled research chemists working along the lines followed by Dr. Staudinger in an attempt to produce a high molecular weight polyoxymethylene dialkyl ether. After six months of intensive work, however, the project was discontinued because of their lack of success. This prior unsuccessful experimentation strongly indicates to the Court that plaintiffs' invention was not an obvious advance over the prior art. Signal Manufacturing Co. v. General Electric Co., D.C., 217 F.Supp. 734.

In addition to the above evidence, three highly skilled expert witnesses testified emphatically that it would not have been obvious to them to combine the teachings of the Staudinger publication, and the MacDonald patent, in order to produce high molecular weight polyoxymethylene dialkyl ethers.

■ Therefore, on the entire record, and a study of the references, as well as the application, together with the briefs of the parties, the Court is convinced that the decision of the Patent Office tribunals is clearly erroneous. Therefore, the Court finds for the plaintiff, and against the defendant, and authorizes the defendant, Commissioner of Patents, to grant a Letters Patent on claims 2, 3, 4, 7, 8 and 9.

The foregoing Opinion contains Findings of Fact and Conclusions of Law.

In passing, it has many times occurred to the writer of this Opinion that the so-called *de novo* trials under Section 145 are really an appellate review of the decisions of the tribunals of the Patent Office as far as the defendant is concerned. At no time has it been the writer's experience that *voir dire* testimony has been presented on behalf of the Government. Whether or not this practice works a hardship on counsel for the Patent Office appearing in a trial such as this, is not certain, but the writer has often wondered whether the cases for the defendant could immeasurably be strengthened through the presentation of *voir dire* testimony.